29 C.C.P.A. (Patents)

In re EWALD.

Patent Appeal No. 4588.

Court of Customs and Patent Appeals.
March 23, 1942.

Cox, Moore & Olson, of Chicago, Ill. (Ballard Moore and Curtis F. Prangley, both of Chicago, Ill., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

There is here brought before us for review the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner rejecting two claims embraced in appellant's application for patent entitled "For Fruit Bobbing Apparatus." Twenty-seven claims embraced in the application were allowed by the examiner. Those claims were not involved in the appeal to the board, nor are they involved here. The two rejected claims numbered, respectively, 12 and 29, which were involved in the appeal to the board and in the appeal to this court, read:

"12. A device for severing or bobbing the necks and stems of pears comprising fruit holding means adapted to hold a pear with the neck of the pear extending beyond the holding means and its stem axis extending in a predetermined direction, means adapted contactingly to encircle the neck of the pear to hold the neck of the pear firmly, cutting means movable transversely of the stem axis to bob the pear while so held, and means to discharge the bobbed end from the encircling holding means."

"29. End bobbing means for pears comprising fruit holding means adapted to support a pear with the neck end of the pear extending beyond the holding means, a hollow member open at one end to receive and encircle the neck of the pear to hold the pear firmly therein, and cutting means shiftable transversely of the axis of the pear between the hollow member and said holding means to sever the stem end of the pear from the body thereof."

Two patents were cited as references:

Berrini, 490, 133, Jan. 17, 1893;

Thompson et al., 2,139,704, Dec. 13, 1938.

The Berrini device is one for cutting off the ends of eggs in the shell. The patent to Thompson et al. is for a fruit preparation machine.

Appellant's complete machine is somewhat complicated. The application contains five sheets of drawings, the various features being delineated in 13 figures. The structure outlined in the appealed claims constitutes a subcombination of the complete device and relates particularly

to mechanism for severing the stem ends of pears from the whole fruit.

The features, or limitations, of appealed claim 12 especially emphasized before us as rendering the subcombination patentable are—(1) "means adapted contactingly to encircle the neck of the pear," (2) "cutting means movable transversely of the stem axis," and (3) "means to discharge the bobbed end from the encircling holding means." In claim 29 the "means adapted contactingly to encircle the neck of the pear" (named in claim 12) is described as "a hollow member open at one end" and the means for severing the pear end is defined as "cutting means shiftable transversely of the axis of the pear." Claim 29 has no limitation respecting means for discharging the bobbed end after its severance.

The structure embracing the foregoing limitations is shown most distinctly in Fig. 7 of appellant's drawing. As illustrated in the drawing, the large end of the pear is impaled on a spike and held between a pair of jaw members which, when clamped, encircle the large end of the fruit. The stem end of the pear extends beyond the holding means so formed into an encircling tubular sleeve aligned with the jaw members as clamped. The arrangement is such that when the device is operated a movable knife (described in the specification as a "bobbing blade") passes between the clamped jaws and the encircling tube to sever the stem end, which end is later ejected from the sleeve by a plunger.

The Thompson et al. patent discloses a subcombination wherein the large end of a pear is impaled on a "spindle" and the stem end is engaged by notches formed in elements described in the specification as "scissorlike centering blades," the notches (which in patentees' preferred form have their inner edges sharpened to cut into the neck of the pear) are in alignment with the spindle. The extreme stem end of the pear is shown projecting outside the notches. It appears that in operation the centering blades are closed upon the stem end of the pear so that such end is gripped in the notches and held in position and the device is moved so that the pear contacts a revolving circular knife (the knife being stationary relative to the other features of the device) which is so arranged that it severs the stem end at a point between the holding means and the notches.

In the Berrini patent, designed for cutting off the small ends of eggs, an arrangement of parts is shown wherein the egg is placed in a holder shaped to conform to the shape of the egg. The small end protrudes from the holder into a device having a socket which fits over the end and it is severed by a knife arranged to pass between the holder and the socket. This device seems to have been intended primarily for use as a table utensil.

The examiner rejected both appealed claims as being unpatentable over either the Thompson et al. patent or the Berrini patent. The board expressed the view that both claims "are fairly met in the Thompson et al. patent," but also held the Berrini patent to be a pertinent reference "In view of the broad scope of the claims."

It does not seem to be questioned that the impaling spindle of the Thompson et al. patent meets the requirement of the claims for "fruit holding means" applied to whole pears, but appellant contends earnestly that the notched blades shown by the Thompson et al. device for holding the stem end of the pear during the cutting off of the stem end may not be regarded as an anticipation of appellant's means adapted to contactingly encircle the neck of the pear, which feature is specifically described in claim 29 as a hollow member open at one end. He also contends that the stationary circular knife shown in the Thompson et al. patent is not an anticipation of his cutting means movable transversely of the stem axis which feature is described in slightly different phraseology in both the appealed claims. Further, he contends that neither of the cited references discloses means (such as his plunger) for discharging the cut off end of the pear.

Appellant's principal argument with respect to the Berrini patent (aside from insisting that it fails to disclose means for discharging the cut off end of the article) is, in substance, that the patent relates to an art which is not analogous to that with which the involved application is concerned.

That there are certain differences in structure between the subcombination shown in the patent to Thompson et al. and that of appellant here involved is obvious, of course, and these were recognized by the tribunals of the Patent Office.

488

From the brief filed by the Solicitor for the Patent Office before us we quote the following:

"It is thought that these [the Thompson et al.] notched blades are fully equivalent to the 'means adapted contactingly to encircle the neck of the pear' which are recited in claim 12 or to the 'hollow member open at one end to receive and encircle the neck of the pear' set forth in claim 29. It is true that, in Thompson et al., the inner parts of the notches are preferably sharpened and cut into the pear to some extent, but there would be no invention in omitting this sharpening and relying on a simple clamping action. In fact Thompson et al. state that the edges are 'preferably' sharpened which clearly suggests that they might be left dull if desired. In any case, the sharpening represents merely a matter of choice. Thompson et al. considered that a better grip for their purpose was obtained by permitting the clamps to cut into the fruit, but it seems evident that conventional gripping jaws might be employed in their device if desired.

"Claims 12 and 29 call for cutting means movable transversely of the axis of the pear. This language relates solely to relative movement and is clearly satisfied by moving the pear toward a fixed knife as well as by moving a knife toward a fixed pear. Moreover, even if this distinction were brought out, it would involve nothing more than an obvious reversal. No new result is produced by moving the knife rather than the pear."

The foregoing seems to us to be sound in principle. It may be said that neither the examiner nor the board used the term "equivalent," but their decisions, fairly construed, would seem to imply equivalency. However that may be, we are unable to agree that the structural differences from the Thompson et al. patent which appellant discloses render his subcombination, as defined in the appealed claims, patentable. We do not overlook the fact that the Thompson et al. patent makes no disclosure of means for discharging the bobbed end of the pear from the notches in the scissor-like blades. This feature was not required in that device since the mere opening of the blades evidently would release the severed end. In appellant's arrangement such feature apparently was necessary and it was obvious to provide it.

We do not think the inclusion of this feature renders appellant's subcombination patentable.

In view of our thought that the Thompson et al. patent constitutes a complete anticipation of all the material features comprising appellant's subcombination, as defined in the two appealed claims, we find it unnecessary to discuss, or determine, the controversy respecting the Berrini patent.

The decision of the board is affirmed.

Affirmed.